**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (610) 667-9029
esmith@brodsky-smith.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNANDA KRISHNA, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1934** |
| vs. | |
| IXIA, ERROL GINSBERG, BETHANY MAYER, LAURENT ASSCHER, JONATHAN FRAM, GAIL HAMILTON, ILAN DASKAL, KEYSIGHT TECHNOLOGIES, INC. and KEYSIGHT ACQUISITIONS, INC., | <u>JURY DEMAND</u> |
| Defendants. | |

Plaintiff Sunanda Krishna ("Plaintiff"), by her attorneys, on behalf of herself and those similarly situated, alleges upon personal knowledge as to her own acts and upon information and belief as to all other matters, based upon the investigation made by and through her attorneys, which investigation included, *inter alia*, the review of United States Securities and Exchange Commission ("SEC") filings, press releases, analyst reports, news articles and other materials, as follows:

## <u>NATURE OF THE CASE</u>

1.    Plaintiff brings this stockholder class action on behalf of herself and all other public stockholders of Ixia ("Ixia" or the "Company"), against Ixia, the Company's Board of Directors (the "Board" or the "Individual Defendants), Keysight Technologies, Inc. ("Parent") and Keysight Acquisitions, Inc. ("Merger Sub", and collectively with Parent, "Keysight, and collectively with Ixia and the Board, the "Defendants"), in connection with their violations of Sections 14(a) and

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.     On January 30, 2017, Ixia and Keysight jointly announced that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") that will culminate in Keysight acquiring all of the outstanding shares of Ixia.  Under the terms of the merger agreement, Ixia public stockholders will receive $19.65 in cash for every share of Ixia common stock held, for an approximate aggregate value of $1.6 billion (the "Proposed Acquisition").

3.     On February 15, 2017, in order to convince Ixia stockholders to vote in favor of the Proposed Acquisition, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Preliminary Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  In particular, Defendants failed to disclose all material information necessary for Ixia's stockholders to make an informed decision regarding the Proposed Transaction.  Specifically, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (1) the background of the Proposed Acquisition; (2) the data and inputs underlying the financial valuation exercises that purportedly support the so-called "fairness opinions" provided by the Company's financial advisor, Deutsche Bank Securities, Inc. ("Deutsche Bank"); and (3) Ixia's financial projections, relied upon by Deutsche Bank.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision regarding whether to vote in favor or against the Proposed Transaction

4.     The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision regarding whether to vote in favor or against the Proposed Transaction.

CLASS ACTION COMPLAINT

**PARTIES**

5.      Plaintiff is an individual.  The Plaintiff is, and at all times relevant hereto, has been an Ixia stockholder and is a resident of New Jersey.

6.      Defendant Ixia is a California corporation with its principal place of business located at 26601 W. Agoura Road, Calabasas, CA 91302.  Ixia provides application performance and security resilience solutions to organizations in the United States and internationally. The Company offers hardware platforms, such as chassis; interface cards that generate, receive, and analyze various traffic types at multiple network layers; and network visibility solutions, which enable network visibility into physical and virtual networks, and optimizes monitoring tool performance. Ixia also provides a suite of software applications for use in automated and targeted delivery, as well as functionality and performance test for technologies and devices, including storage, video, voice, intelligent networks, applications, routing, switching, WiFi, broadband, wireless, software defined networks, and virtual networks and functions. In addition, Ixia offers technical support, warranty, and software maintenance services, as well as training and professional services. The Company offers its products and services through direct sales force, as well as through distributors, value added resellers, system integrators, and other partners. It serves a range of enterprises, service providers, network equipment manufacturers, and governments. Ixia common stock is publicly traded on the NasdaqGS under the symbol "XXIA".  As of February 21, 2017, there were over 82 million common shares of Ixia stock outstanding.

7.      Defendant Errol Ginsberg ("Ginsberg") is the founder of the Company and has been a director of the Company at all relevant times.  Additionally, Ginsberg serves as the Chairman of the Board and Chief Innovation Officer of the Company.

8.      Defendant Bethany Mayer ("Mayer") has been a director of the Company at all relevant times.  Additionally, Mayer serves as the President and Chief Executive Officer ("CEO") of the Company.

9.      Defendant Laurent Asscher ("Asscher") has been a director of the Company at all relevant times.  Additionally, Asscher serves on the Board's Compensation Committee.

CLASS ACTION COMPLAINT

10.     Defendant Jonathan Fram ("Fram") has been a director of the Company at all relevant times.  Additionally, Fram serves as the Chair of the Board's Nominating and Corporate Governance Committee, as a member on the Board's Audit and Compensation Committees, and is classified as a "Financial Expert" by the Board.

11.     Defendant Gail Hamilton ("Hamilton") has been a director of the Company at all relevant times.  Additionally, Hamilton serves as the Chair of the Board's Compensation Committee and as a member on the Board's Audit and Nominating and Corporate Governance Committees.

12.     Defendant Ilan Daskal ("Daskal") has been a director of the Company at all relevant times.  In addition, Daskal serves as the Chair of the Board's Audit Committee and is classified as a "Financial Expert" by the Board.

13.     Defendants Ginsberg, Mayer, Asscher, Fram, Hamilton, and Daskal identified in ¶¶ 7-12 are collectively referred to as the "Individual Defendants."  By reason of their positions as officers and/or directors of the Company, the Individual Defendants are in a fiduciary relationship with plaintiff and the other Ixia public stockholders, and owe Plaintiff and other Ixia stockholders the highest obligations of loyalty, good faith, fair dealing, due care, and full and fair disclosure.

14.     Defendant Keysight is a Delaware corporation with its principle place of business located at 1400 Fountaingrove Parkway, Santa Rosa, CA 95403.  Keysight provides electronic design and test solutions to communications and electronics industries in the United States and internationally. Keysight's Communications Solutions Group segment provides radio frequency and microwave test instruments and related software, and electronic design automation (EDA) software tools; oscilloscopes, logic and serial protocol analyzers, logic-signal sources, arbitrary waveform generators, and bit error rate testers; optical modulation analyzers, component analyzers, power meters, and laser source products, as well as optical amplifier, filter, and other passive component solutions; and related software solutions. Keysight's Electronic Industrial Solutions Group segment offers design tools; design verification solutions; and general purpose test and measurement products, such as digital multi-meters, function generators, waveform synthesizers, counters, data acquisition products, audio analyzers, LCR Meters, thermal imaging

solutions, low-cost USB modular units, precision source measurement units, ultra-high precision device current analyzers, test executive software platforms, and a range of power supplies. This segment also offers comprehensive manufacturing systems, such as printed-circuit-board-assembly testers and IC parametric testers; and material analysis products that include atomic-force and scanning-electron microscopy products. Keysight's Services Solutions Group segment provides repair, calibration, and consulting services; and remarkets used Keysight equipment, as well as asset tracking, servicing, and utilization requirements throughout the product life cycle. The company also offers start-up assistance, instrument productivity, and application services, as well as customization and optimization services. It sells its products through direct sales force, resellers, manufacturer's representatives, and distributors   Keysight is traded on the New York Stock Exchange ("NYSE") under the ticker code "KEYS."

15.    Defendant Keysight Acquisition, Inc. is a California corporation and a wholly-owned subsidiary of Parent.

**JURISDICTION AND VENUE**

16.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Section 14(a) and 20(a) of the Exchange Act.

17.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial Justice.

18.    Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Ixia maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv)

- 5 -
CLASS ACTION COMPLAINT

Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

19.    Ixia provides application performance and security resilience solutions to organizations in the United States and internationally.

20.    The Company offers hardware platforms, such as chassis; interface cards that generate, receive, and analyze various traffic types at multiple network layers; and network visibility solutions, which enable network visibility into physical and virtual networks, and optimizes monitoring tool performance.

21.    Ixia also provides a suite of software applications for use in automated and targeted delivery, as well as functionality and performance test for technologies and devices, including storage, video, voice, intelligent networks, applications, routing, switching, WiFi, broadband, wireless, software defined networks, and virtual networks and functions. In addition, Ixia offers technical support, warranty, and software maintenance services, as well as training and professional services.

22.    The Company offers its products and services through direct sales force, as well as through distributors, value added resellers, system integrators, and other partners. It serves a range of enterprises, service providers, network equipment manufacturers, and governments.

23.    Ixia has a demonstrated history of financial success, recently evidenced by its financial results for the third quarter ended September 30, 2016 that were released on November 1, 2016.  Notably, the Company's GAAP net income for the 2016 third quarter was $4.8 million, a substantial increase over the $1.5 million in the same metric in the second quarter of 2016.

24.    Discussing these extremely positive results, Defendant Mayer noted that, "We are pleased with our results in the third quarter, with revenue and EPS exceeding our guidance."  She continued, predicting positivity in the future, "We are continuing to execute and invest in our strategy and are pleased with the early results we have generated from the changes we made to our sales leadership and organization."

CLASS ACTION COMPLAINT

25.     Such an incredible showing is not an anomaly for the Ixia, but rather is evidence of its trend of profitable results.  For example, on August 2, 2016, the Company released its Financial 2016 Q2 financial results, which showed an increase in total revenue from $112.7 million in the 2016 Q1 to $120.1 million in 2016 Q2.  Speaking on these positive results, Defendant Mayer stated, "In the second quarter we achieved revenue at the high-end of our guidance range and delivered solid earnings that were driven by our strong gross margin performance and continued focus on financial discipline."

26.     Finally, on February 21, 2017, the Company released its preliminary results for the fourth quarter and year ended December 31, 2016.  Total revenue increased over the third quarter going from $123.9 million to $128.2 million.  Defendant Mayer stated, "We achieved strong results in the fourth quarter with increased momentum for our network visibility solutions, and we expect earnings and revenue in-line with our guidance. Revenue for our network visibility solutions grew 22% year-over-year, driven by increased demand in the enterprise. With our continued focus on operational excellence and financial discipline we generated strong cash flow from operations during the quarter, bringing our total for the year to $81 million."

***The Flawed Process Leading to the Proposed Acquisition***

27.     On August 16, 2016, Defendant Mayer received a phone call from Ron Nersesian, President and CEO of Keysight, who expressed interest in a possible strategic transaction with Ixia, and requested an opportunity to conduct due diligence in order to make a proposal.

28.     Throughout August and September, Mayer discussed with the Ixia Board Mr. Nersesian's request and Keysight's interest in Ixia on several occasions and also had conversations with Mr. Nersesian regarding a potential strategic transaction on several occasions.

29.     On September 29, 2016, Keysight submitted to Ixia a non-binding proposal to acquire Ixia at a purchase price of $16.00 per share in cash, with the option to pay part of the consideration in Keysight stock if Ixia so preferred.

30.     Thereafter the Board determined to engage a financial advisor and agreed to hear presentations from Deutsche Bank and Bank A to fill the role.  Each potential financial advisor presented potential third parties to contact regarding a proposed strategic transaction with Ixia.  On

CLASS ACTION COMPLAINT

October 4, 2016, the Ixia Board approved the retention of Deutsche Bank as its financial advisor, which was confirmed by signed retention letter on October 10, 2016. Significantly, the Preliminary Proxy discloses that Deutsche Bank will be paid approximately $23.5 million for its services to Ixia, with all but $750,000 being contingent on the consummation of the merger. Notably, the Preliminary Proxy fails to disclose the percentage amount Ixia has agreed to pay Deutsche Bank if the deal is terminated and Ixia is entitled to a termination fee. This amount or percentage should be disclosed to Ixia shareholders as well as the amount of expense reimbursement Ixia must pay to Deutsche Bank.

31.     Throughout October and early November 2016, Duetsche Bank worked with Ixia management to prepare preliminary financial analyses of the unsolicited proposal from Keysight and various potential strategic alternatives, based initially on publicly available information and later based on financial plans prepared by Ixia management.

32.     Also at this time, the Ixia board approved of eleven additional potential strategic partners including eight potential financial acquirers and three potential strategic acquirers, as potential bidders to be contacted by Deutsche Bank. Included in this list was "Party A" a potential strategic acquirer, and another was "Party B" a potential financial acquirer. However, at this time, the Ixia board did not initiate contact with any such potential third parties as it had not yet determined to engage in a public sales process for the Company.

33.     Throughout October 2016, Ixia had contact with representatives of Keysight regarding a proposed strategic transaction, and was contacted by Party A throughout the same time period, though such contact was not reciprocated.

34.     On November 1, 2016, Ixia released its earnings release reporting its financial results for its third quarter ended September 30, 2016. On November 4, 2016, Ixia management presented to the Ixia board a preliminary multi-year financial plan for the Ixia Board's consideration, which was then provided to Deutsche Bank for its use in completing an updated financial analysis of Ixia. Thereafter on November 7, 2016, the Ixia Board met telephonically with Deutsche Bank who reviewed an updated financial analysis based on Ixia management's three-year financial plan for 2017, 2018, and 2019 as well as estimates for 2020 and 2021 calculated by

Deutsche Bank based on guidance provided by Ixia's management and approved for Deutche Bank's use by the Ixia Board.

35.    During November 2016, Ixia and Keysight had further discussions regarding a potential strategic transaction, including to arrange the negotiation and entry into a Non-Disclosure Agreement (an "NDA") prior to any due diligence taking place.

36.    Also during November 2016, Ixia authorized Deutsche Bank to contact the eleven other previously approved parties to gauge interest in a potential strategic transaction. Upon being contacted Party A indicated it wanted to team with one of the potential financial sponsor acquirers previously approved by the Ixia board in a potential strategic transaction.

37.    Also during November, 2016, Ixia entered into NDAs with a total of seven potential bidders, including Keysight, Party A, the potential financial sponsor acquirer that had teamed with Party A, and Party B, all of which contained standstill provisions. The Preliminary Proxy indicates that the standstill provisions "permitted the potential bidder to communicate exclusively with the Ixia Board with respect to a transaction involving Ixia or to seek a waiver of such standstill provisions." The Preliminary Proxy fails, however, to adequately explain the exclusivity portion of the provision. The other five contacted parties expressed no interest. Throughout November 2016 the potential bidders who had executed NDAs participated in meetings with Ixia management and Deutsche Bank. Following such meetings, three potential bidders who had executed NDAs dropped out of the process.

38.    On November 30, 2016, Deutsche Bank distributed process letters requesting preliminary proposals for the acquisition of Ixia by December 13, 2016, to Keysight, Party A, Party B, and three other potential bidders.

39.    On December 2, 2016, reporters contacted various persons regarding a rumor that Ixia was engaged in a sales process, to which neither Ixia or Deutsche Bank responded. Thereafter seven additional potential third parties, including Party C, contacted Ixia or Deutsche Bank inquiring about the sales process. After consideration, Ixia determined to contact two such parties, including Party C, both of whom executed NDAs with Ixia. Both NDAs contained standstill provisions.

CLASS ACTION COMPLAINT

40. On December 13, 2016, Ixia received preliminary proposals from four potential bidders: Keysight ($17.00 per share in cash), Party A (a range of $16.50-17$00 per share in cash), Party B (a range of $16.00-$16.50 in cash), and Party C ($18.00 all cash).

41. During the period from December 15, 2016, through January 24, 2017, due diligence meetings between Deutsche Bank and representatives of Keysight, Party A, Party B, and Party C occurred.

42. Ixia distributed process letters to the remaining parties on January 5, 2017, requesting final bids by January 24, 2017. During this time continued due diligence meetings were had between the interested parties and Ixia or its agents.

43. On January 24, 2017, Ixia received final offers from all potential bidders, including Keysight ($17.55 per share in cash and stock), Party A ($18.50 per share in cash), Party B ($16.50 per share in cash), and Party C ($16.25 per share in cash).

44. On January 26, 2017, the Ixia board held a meeting to discuss the offers received on January 24, 2017. The Board determined not to continue discussions with Party B or Party C based on the insufficiency of the price offered. Additionally, the Ixia Board instructed Defendant Mayer to contact Mr. Nersesian to advise him that the Company received an all-cash offer from another bidder at a price that was materially higher than what Keysight offered, and to suggest Keysight would need to significantly increase its bid and propose an all-cash transaction to remain competitive. Following which, Defendant Mayer did so contact Mr. Nersesian.

45. Due to Party A's preference to announce a transaction on or before January 31, 2017, Ixia began negotiations with Party A to achieve that goal should a transaction be entered into between those two parties. As such, Ixia continued discussions with both Keysight and Party A on January 27 and January 28, 2017.

46. On January 28, 2017, Keysight submitted to Ixia a revised bid of $19.65 per share all cash. After discussion with its advisors, the Ixia Board instructed Deutsche Bank to contact Party A to advise it that an all-cash bid materially higher than that of Party A had been received, and to invite Party A to increase its bid if it wanted to move forward in the process. Party A responded the same day indicating it was unlikely to increase its bid.

CLASS ACTION COMPLAINT

47.    After final due diligence discussions and negotiations, on January 29, 2017, the Ixia Board held a telephonic meeting, with representatives from Deutsche Bank and its legal advisor to discuss Keysight's latest offer.  After Deutsche Bank reviewed and discussed with the Ixia Board certain financial analyses, it determined that Keysight's offer was, fair from a financial point of view the holders of Ixia common stock.

48.    On January 30, 2017, the merger agreement was executed and jointly announced.

***The Proposed Acquisition***

49.    On January 30, 2017, Ixia and Keysight announced the Proposed Acquisition.  The press release stated in relevant parts:

> **SANTA ROSA and CALABASAS, Calif. January 30, 2017** – Keysight Technologies, Inc. (NYSE: KEYS) and Ixia (Nasdaq: XXIA) today announced a definitive agreement for Keysight to acquire Ixia in an all-cash transaction totaling approximately $1.6 billion in consideration, net of cash. The Board of Directors of both companies have unanimously approved the transaction, which is anticipated to close no later than the end of October 2017 and is subject to customary closing conditions and approvals.
>
> Under the terms of the agreement, Ixia shareholders will receive $19.65 per share in cash. This represents a premium of approximately 45% to Ixia's unaffected closing stock price on December 1, 2016, the last trading day prior to media reports that Ixia was considering strategic alternatives, and a premium of approximately 38% to the Ixia's unaffected 52-week high closing stock price for the period ended December 1, 2016.
>
> "The proposed acquisition of Ixia is in direct alignment with our strategy to transform Keysight for growth and is 100% complementary to our business," said Ron Nersesian, Keysight president and CEO. "The combination creates a powerful innovation engine to fuel growth, expands our software-centric solutions and builds new opportunities through sales and technology leverage. Ixia also brings a world-class level of talent, and together, we will provide leading-edge solutions that address the fastest-growing communications and networking trends including 5G, IoT, visibility, security and application performance."
>
> The combination of Keysight and Ixia brings together two highly complementary companies to create an innovative force in leading-edge technologies that spans electronic design, device and network validation, and application and security performance. Ixia has a broad IP portfolio that encompasses network communications, visibility, application and security technologies with solutions deeply rooted in software. Additionally, Ixia's IP includes extensive networking and wireless protocols that will extend Keysight's position in wireless communications and create a unique combination of Layer 1 through 7 end-to-end

solutions that address fast-growing segments of the 5G communications design and test ecosystem.

"We are confident that Keysight is the ideal partner to accelerate our growth initiatives and will continue to build upon our successful 20-year history," said Bethany Mayer, Ixia president and CEO. "Ixia and Keysight share many of the same values including our dedication to innovation of leading-edge technologies, and commitment to operational excellence and financial discipline, which combine to create value for shareholders. We also have industry leading IP portfolios that are complementary, deep technical prowess and amazing teams. We believe that together, Ixia and Keysight have a tremendous opportunity to further strengthen our market leading positions and create unprecedented value for our customers, partners, employees and shareholders. The transaction also provides Ixia shareholders significant cash value at a substantial premium to market."

Benefits of the Combination

● Accelerates Keysight's Growth by Creating a Powerful Innovation Engine: Enables a unique combination of Layer 1 through 7 end-to-end solutions for assessing performance from the mobile device to the data center and the cloud. Also expands Keysight's software capabilities by adding engineering talent and software-centric solutions with a high gross-margin profile.

● Enhances Scale, Expands SAM and Deepens Market Penetration: Increases Keysight's SAM by approximately $2.5 billion and establishes a strong position in fast-growing segments. The combined company will serve over 100 countries around the world, and Keysight's worldwide go-to-market strength and sales channel enables Ixia access to previously untapped non-US NEMs, particularly in Asia.

● Combines Global Talent and Advances Innovation Culture: The combination brings together two world-class organizations with innovative culture and common values that will help drive strong collaboration and innovation.

● Compelling Financial Profile: The combined company will have an attractive financial profile with enhanced cash flow driven by synergies, scale and improved revenue growth.

● Immediately Accretive: Keysight expects the transaction to be immediately accretive to adjusted earnings with annual cost synergies of $60 million, of which $50 million is expected to be achieved within 24 months. Revenue synergies are expected to be in excess of $50 million by year three and $100 million by year five.

Timing and Approvals

The transaction, which is expected to be completed no later than the end of October 2017, is subject to approval by Ixia shareholders, regulatory approvals, including expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, as well as other customary closing conditions.

Keysight has entered into voting agreements with Errol Ginsberg, Chairman of the Board of Ixia, and Katelia Capital Group, Ltd., collective owners of approximately

CLASS ACTION COMPLAINT

23% of Ixia's outstanding common stock, pursuant to which the shareholders have agreed to vote their shares in support of the transaction.

Investor Conference Call Scheduled for Today

Keysight and Ixia will host a joint conference call and online webcast today, Jan. 30 at 5:30 a.m. Pacific Time (8:30 a.m. Eastern Time) to discuss the transaction. This event will be webcast in listen-only mode. Listeners may log on to the call at Keysight's Investor website at www.investor.keysight.com or on Ixia's website at http://investor.ixiacom.com. Interested participants can also access the call by dialing (877) 201-0168 or (647) 788-4901 for international callers. Conference ID 63695238. A slide presentation will be available 15 minutes before the call, on the Keysight website, under Upcoming Events.

Following the live webcast, an archived version will be available for at least 90 days. An audio replay of the call will be available at approximately 8:00 a.m. Pacific Time (11:00 a.m. Eastern Time), through Feb. 6 by dialing (800) 585-8367 or (416) 621-4642 from outside the U.S. and entering pass code 63695238

Keysight expects to report financial results for its first quarter of fiscal 2017 on Thursday, Feb. 16, 2017. Ixia expects to report financial results for its fourth quarter and year 2016 on Tuesday, Feb. 21, 2017 through a press release and at that time will not hold a conference call.

Advisors

Goldman, Sachs & Co. is serving as financial advisor to Keysight and Cleary Gottlieb Steen & Hamilton LLP is serving as legal counsel. Deutsche Bank is serving as financial advisor to Ixia and Bryan Cave LLP is serving as legal counsel to Ixia.

***The Inadequate Merger Consideration***

50.     Significantly, analyst expectations, the Company's strong recent performance, high likelihood of future, synergistic benefits to Keysight, and the Company's oft-repeated belief in the intrinsic value of the Ixia establish the inadequacy of the merger consideration.

51.     The compensation afforded under the Proposed Acquisition to Company stockholders significantly undervalues the Company.  Pursuant to the terms of the Merger Agreement, the transaction values Company stock at approximately $19.65 per share. Significantly, analysts tracking the Company have valued the Company significantly higher in recent months. Most notably within the last two years, financial analysts at Credit Suisse Group have valued the Company as high as $35.00 per share, a value ***78.12% greater*** than that offered in the Proposed Acquisition.

CLASS ACTION COMPLAINT

52.    Furthermore, the consideration offered in the Proposed Acquisition does not take into account the considerable synergies afforded to Keysight.  Notably, Keysight's President and CEO Ron Nersesian commented on the strong synergies that Keysight will reap from the Proposed Acquisition, stating, "The proposed acquisition of Ixia is in direct alignment with our strategy to transform Keysight for growth and is 100% complementary to our business."

53.    Such statements regarding the Proposed Acquisition do not address the fact that the shares of Ixia's common stockholders are being significantly undervalued, but instead focus on how this deal will help Keysight at the expense of Ixia and the Company's stockholders.

54.    Accordingly, the Board has denied Ixia's stockholders the fair and adequate value of their investment by entering into the Proposed Acquisition for inadequate consideration.

**Conflicts of Interest**

55.    Company directors and officers will receive unique benefits in connection with the merger.

56.    Under the terms of the Merger Agreement, upon the consummation of the Proposed Acquisition, each outstanding Company option, equity award, or other right to purchase Company stock will vest and be cancelled in exchange for the right to receive the Merger consideration, instantly converting the large, illiquid holdings of many of the Individual Defendants and other Company insiders into cash.  Significantly, upon information and belief, members of the Company's Board and other Company insiders collectively own thousands of such options for which they will receive immediate liquidity.  Notably, Defendant Mayer stands to gain over $12 million in compensation not shared amongst Plaintiff or other common Ixia stockholders.

57.    For example, the following table lists the outstanding Company options, which would be subject to vesting should the Proposed Acquisition be consummated:

| | Vested Stock Options (#) | Value of Vested Stock Options ($)[1] | Unvested Stock Options (#) | Value of Unvested Stock Options ($)[1] | Total Value ($) |
|---|---|---|---|---|---|
| **Executive Officers** | | | | | |
| Bethany Mayer | 514,841 | 5,143,227 | 597,659 | 5,629,773 | 10,773,000 |
| Brent T. Novak | 103,125 | 920,700 | 166,875 | 1,432,100 | 2,352,800 |
| Errol Ginsberg | 642,561 | 4,401,404 | 273,439 | 2,492,316 | 6,893,720 |
| Alexander J. Pepe | 286,196 | 2,413,618 | 144,691 | 1,283,796 | 3,697,414 |
| Dennis J. Cox | 278,061 | 1,622,648 | 156,471 | 1,343,422 | 2,966,070 |
| Marie Hattar | 54,375 | 261,938 | 115,625 | 643,063 | 905,000 |

CLASS ACTION COMPLAINT

| | | | | | |
|---|---|---|---|---|---|
| Patricia Key | 3,125 | 23,781 | 46,875 | 356,719 | 380,500 |
| Matthew S. Alexander | 29,843 | 246,689 | 72,657 | 600,386 | 847,075 |
| Walker H. Colston, II | 130,948 | 737,514 | 71,252 | 613,458 | 1,350,972 |
| Christopher L. Williams | 233,592 | 1,619,704 | 77,345 | 685,002 | 2,304,706 |
| | | | | | |
| **Non-Employee Directors** | | | | | |
| Laurent Asscher | 68,500 | 465,505 | 7,500 | 70,125 | 535,630 |
| Ilan Daskal | 22,500 | 131,625 | 7,500 | 70,125 | 201,750 |
| Jonathan Fram | 68,500 | 465,505 | 7,500 | 70,125 | 535,630 |
| Gail Hamilton | 61,000 | 405,130 | 7,500 | 70,125 | 475,255 |

58.    Furthermore, the following table lists the outstanding Company RSUs, which would be subject to vesting should the Proposed Acquisition be consummated:

| | RSUs (#) | Value of RSUs ($)[1] | Performance-Based RSUs (#)[2] | Performance-Based RSUs ($)[1] | Total Value ($) |
|---|---|---|---|---|---|
| **Executive Officers** | | | | | |
| Bethany Mayer | — | — | 147,200 | 2,892,480 | 2,892,480 |
| Brent T. Novak | 8,714 | 171,230 | 60,400 | 1,186,860 | 1,358,090 |
| Errol Ginsberg | 257 | 5,050 | 87,700 | 1,723,305 | 1,728,355 |
| Alexander J. Pepe | — | — | 53,600 | 1,053,240 | 1,053,240 |
| Dennis J. Cox | 175 | 3,439 | 66,900 | 1,314,585 | 1,318,024 |
| Patricia Key | 23,917 | 469,969 | — | — | 469,969 |
| Marie Hattar | — | — | 33,300 | 654,345 | 654,345 |
| Matthew S. Alexander | 10,507 | 206,463 | 36,500 | 717,225 | 923,688 |
| Walker H. Colston, II | 44 | 865 | 30,300 | 595,395 | 596,260 |
| Christopher L. Williams | 169 | 3,321 | 29,500 | 579,675 | 582,996 |
| | | | | | |
| **Non-Employee Directors** | | | | | |
| Laurent Asscher | 4,855 | 95,401 | — | — | 95,401 |
| Ilan Daskal | 4,855 | 95,401 | — | — | 95,401 |
| Jonathan Fram | 4,855 | 95,401 | — | — | 95,401 |
| Gail Hamilton | 4,855 | 95,401 | — | — | 95,401 |

59.    Moreover, certain employment agreements with several Ixia officers or directors are entitled to severance packages should their employments be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them at the very least, hundreds of thousands of dollars, compensation not shared by Ixia common stockholders.

60.    The following table sets forth the Golden Parachute compensation for certain Ixia directors and officers, as well as their estimated value payable:

**Golden Parachute Compensation**

CLASS ACTION COMPLAINT

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Bethany Mayer | 2,760,000 | 8,522,253 | 34,739 | 11,316,992 |
| Brent T. Novak | 850,000 | 2,790,190 | 34,739 | 3,674,929 |
| Errol Ginsberg | 2,857,761 | 4,220,671 | 34,739 | 7,113,171 |
| Dennis J. Cox | 807,500 | 2,661,446 | 34,739 | 3,503,685 |
| Hans-Peter Klaey[4] | — | — | — | — |

61. In addition to the other stated conflicts, the Proxy further provides that "it is expected that certain of [the Company's] executive officers may, prior to or upon completion of the merger, enter into new employment arrangements with Keysight, with the surviving corporation, or with one of their respective affiliates." The Preliminary Proxy fails to disclose who took part in any communications regarding post-transaction employment and when such communications took place.

62. Further, the Preliminary Proxy provides, "In connection with the execution of the merger agreement, the Company and Keysight have entered into a Voting and Support Agreement, dated as of January 30, 2017 (each, a "support agreement"), with each of (i) Laurent Asscher and Katelia Capital Group Ltd. and (ii) Errol Ginsberg and The Errol Ginsberg and Annette R. Michelson Family Trust dated October 13, 1999 (the persons referenced in clauses (i) and (ii), collectively, the "Company major shareholders"). Mr. Asscher is member of the Ixia board, and Errol Ginsberg is the Chairman of the Ixia board and our Chief Innovation Officer."

63. The Voting and Support Agreement referenced above amounts to almost 23% of the outstanding shares of the Company.

64. Thus, while the Proposed Acquisition is not in the best interests of Ixia stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy***

65. On February 15, 2017, the Company filed with the SEC a materially misleading and incomplete Preliminary Proxy that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading up to the Proposed Transaction*

66.     Specifically, the Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning Ixia's Financial Projections*

67.     The Preliminary Proxy fails to provide material information concerning financial projections provided by Ixia's management, reviewed with Ixia and relied upon by Deutsche Bank in its analyses.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

68.     The Preliminary Proxy discloses several non-GAAP accounting metrics including Adjusted EBITDA, Adjusted EPS and Unlevered Free Cash Flow. However, providing these non-GAAP metrics without reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.

69.     Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a Recommendation Statement that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

70.     The Preliminary Proxy also fails to disclose the following Company projections:

(i)      Taxes;

(ii)     Capital expenditures;

(iii)    Change in working capital;

(iv)     Operating expense;

(v)      Depreciation and amortization; and

(vi)     Stock based compensation.

- 17 -
CLASS ACTION COMPLAINT

71.     Finally, the Preliminary Proxy fails to disclose how Deutsche Bank calculated the after-tax unlevered free cash flow amounts for fiscal years ended December 31, 2020 and 2021, including, the "assumptions approved for use by Ixia, which amounts were approved for Deutsche Bank's use by Ixia."

72.     Without accurate projection data presented in the Preliminary Proxy, the Plaintiff and other stockholders of Ixia are unable to properly evaluate the Company's true worth, the accuracy of Deutsche Bank's financial analyses, or make an informed decision whether to vote their Company stock in the Proposed Acquisition.

*Omissions and/or Material Misrepresentations Concerning Deutsche Bank's Financial Analyses*

73.     In the Preliminary Proxy, Deutsche Bank describes its fairness opinion and the various valuation analyses it performed to render its opinion.  However, Deutsche Bank description fails to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

74.     For example, the Preliminary Proxy does not disclose material details concerning the analyses performed by Deutsche Bank in connection with the Proposed Transaction, including (among other things):

Discounted Cash Flow Analysis (Preliminary Proxy at 45)

a.     The individual inputs and assumptions utilized by Deutsche Bank to derive the discount rate range of 10.0% - 12%.

b.     The inputs and assumptions utilized by Deutsche Bank to derive the range of perpetuity growth rates of 2.5% to 3.5%.

Selected Companies Analysis – (Preliminary Proxy at 43-44)

a.     The financial metrics and multiples for each of the selected companies observed in the analysis.

b.     Whether Deutsche Bank performed any type of benchmarking analyses for Ixia in relation to the selected public companies?

CLASS ACTION COMPLAINT

Selected Transactions Analysis (Preliminary Proxy at 44-45)

        a.      The transaction price for each of the selected transactions.

        b.      The financial metrics and multiples for each of the selected transactions observed in the analysis.

        c.      Whether Deutsche Bank perform any type of benchmarking analyses for Ixia in relation to the selected transactions.

75.     Without the omitted information identified above, Ixia's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial information and related disclosures, Ixia's public stockholders cannot gauge the reliability of Deutsche Bank's fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.

76.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

**CLASS ACTION ALLEGATIONS**

77.     Plaintiff brings this action as a class action, pursuant to FRCP 23, individually and on behalf of all holders of Ixia common stock who are being and will be harmed by the Individual Defendants' actions, described herein (the "Class"). Excluded from the Class are Defendants and any person, firm, trust, corporation or other entity related to or affiliated with any Defendant.

78.     This action is properly maintainable as a class action.

79.     The Class is so numerous that joinder of all members is impracticable. As of February 21, 2017, there were over 82 million common shares of Ixia stock outstanding, resulting in hundreds, if not thousands of stockholders.

80.     There are questions of law and fact which are common to the Class including, *inter alia*, the following:

        a.      Whether the Proposed Acquisition is unfair to the Class;

        b.      Whether Plaintiff and the other members of the Class would be irreparably damaged were the transactions complained of herein consummated;

c.      Whether Defendants violated Federal laws;

d.      Whether the Individual Defendants are acting in furtherance of their own self-interest to the detriment of the Class; and

e.      Whether Defendants have disclosed and will disclose all material facts in connection with the Proposed Acquisition.

81.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

82.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

83.     Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to the Class and, therefore, preliminary and final injunctive relief on behalf of the Class as a whole is appropriate.

## FIRST COUNT

**On Behalf of Plaintiff and the Class for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**
**<u>Against Ixia and the Individual Defendants</u>**

84.     Plaintiff repeats all previous allegations as if set forth in full herein.

85.     The Individual Defendants have issued the Proxy with the intention of soliciting stockholder support of the Merger.

86.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material

fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. 240.14a-9.

87.    Specifically, the Preliminary Proxy violates Section 14(a) and Rule 14a-9 because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, the Individual Defendants should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

88.    The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

89.    The misrepresentations and omissions in the Proxy are material to Plaintiff, and Plaintiff will be deprived of her entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Merger.

90.    Because of the false and misleading statements in the Preliminary Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## SECOND COUNT

**On Behalf of the Plaintiff and the Class for Violations of Section 20(a) of the Exchange Act Against the Individual Defendants**

91.    Plaintiff brings this Exchange Act claim on behalf of himself as individuals and on behalf of all other Ixia stockholders.

92.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

93.    The Individual Defendants acted as controlling persons of Ixia within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Ixia, and participation in and/or awareness of the Company operations and/or intimate knowledge of the false statements contained in the Preliminary Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly,

CLASS ACTION COMPLAINT

the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

94.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Preliminary Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

95.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Preliminary Proxy, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Preliminary Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Merger.  They were, thus, directly involved in the making of this document.

96.     In addition, as the Preliminary Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The Preliminary Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

97.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

98.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and in favor of the Class, and against the Defendants, as follows:

CLASS ACTION COMPLAINT

1    A.    Declaring that this action is properly maintainable as a class action, certifying Plaintiff as Class representative and certifying her counsel as class counsel;

3    B.    Preliminarily and permanently enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition;

6    C.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

8    D.    Granting such other and further equitable relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 8, 2017          **BRODSKY & SMITH, LLC**

By: */s/ Evan J. Smith*
Evan J. Smith (SBN242352)
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*